**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAY VINEYARD,                 Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br>                Defendant. | 3:14-cv-00254-HDM-VPC <br><br> **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

      This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand (#11) and defendant's cross-motion to affirm and opposition (#s 12/13).  For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

      On June 15, 2011, Ray Vineyard ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act.  (Administrative Record ("AR") 24.)  He alleged that his disability commenced on December 12, 2009.  (*Id*.)  The Social Security Administration denied his application in the first instance on August 12, 2011, and also upon reconsideration, on November 22, 2011.  (*Id*.)  On September 6, 2012, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.  (*Id*. at 40-78.)  The ALJ issued a written decision on March 6, 2013, finding that plaintiff had "not been disabled" at any time between August 1, 2010 and the decision date.  (*Id*. at 24-33.)  Plaintiff appealed, and the Appeals Council denied review on March 15, 2014.  (*Id*. at 5-7.)  Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

      On May 16, 2014, plaintiff filed a complaint for judicial review (#1).  In his motion for remand or reversal, plaintiff argues that the ALJ erred in her failure to resolve an alleged conflict

1  in the testimony of the Vocational Expert ("VE"), her misapplication of the Medical-Vocational

2  Rules, and also in her evaluation of the opinion of Dr. Abdollah Assad ("Dr. Assad").  (#11 at 6-

3  14).      Defendant opposed and submitted a cross-motion to affirm, in which she disputes

4  plaintiff's contentions of error.  (#12 at 3-7).

5                                    **II.    STANDARD OF REVIEW**

6          The burden of proving disability in a claim for Social Security benefits rests upon the

7  claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

8  claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

9  any medically determinable physical or mental impairment which can be expected . . . to last for a

10  continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

11         This court has jurisdiction to review an ALJ's decision denying a claim for SSDI and SSI

12  payments after the plaintiff has exhausted administrative remedies.  *See Brewes v. Comm'r of*

13  *Soc. Sec. Admin*., 682 F.3d 1157, 1161-62 (9th Cir. 2012).  The court must affirm the ALJ's

14  decision unless it rests on legal error or is unsupported by substantial evidence in the

15  administrative record.  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted);

16  see also 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if

17  supported by substantial evidence, shall be conclusive").  The court applies the substantial

18  evidence standard only to those particular issues and errors that the plaintiff identifies in his or

19  her opening brief.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009).

20         The substantial evidence standard is not onerous: it is "more than a mere scintilla but less

21  than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

22  to support a conclusion." *Hill*, 698 F.3d at 1159 (citation and quotation omitted).  Although the

23  ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence

24  that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation

25  omitted).  The ALJ's discussion must adequately explain the decision in light of such evidence:

26  "the ALJ, not the district court, is required to provide specific reasons for rejecting [the

27  evidence,]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

28

discussing rejection of lay testimony) and the district court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### III.   DISCUSSION

**A.     SSDI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id*. § 404.1520(b). The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id*. § 404.1520(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id*. § 404.1520(c). The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof. *Id*. § 404.1520(c). In step three, the claimant's impairment is compared to the Agency's impairment list. *Id*. § 404.1520(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is on the list, or is equivalent to any impairment therein, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. *Id.* § 404.1520(d).

If the Commissioner does not find disability at step three, review of the claim proceeds to the fourth step: whether the claimant can perform relevant past work. *Id*. § 404.1520(a)(4)(iv).

1    The claimant is not disabled where he or she can engage in such work. *Id*. § 404.1520(e).  The

2    ALJ will find that the claimant can return to relevant past work if he or she can perform the

3    "actual functional demands and job duties of a particular past relevant job" or the "functional

4    demands and job duties of the [past] occupation as generally required by employers throughout

5    the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation

6    and citation omitted).

7        In making the step four determination, the ALJ considers the claimant's "residual

8    functional capacity" ("RFC") and the physical and mental demands of the work previously

9    performed.  20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir.

10   2010).  RFC is what the claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545.

11   In determining the claimant's RFC, the ALJ must assess all of the evidence, including medical

12   reports and descriptions by the claimant and others of the claimant's relevant limitations.  *Id*. §

13   404.1545(a).

14       When evaluating a claimant's RFC, the ALJ is not required to believe every allegation the

15   claimant offers regarding his or her limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

16   (citation omitted).  The ALJ must follow a two-part inquiry where the plaintiff alleges that the

17   disability results from excessive limitations or pain.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

18   36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).

19   First, the ALJ determines whether the claimant has presented objective medical evidence of an

20   underlying impairment that reasonably can be expected to produce the alleged symptoms.

21   *Lingenfelter*, 504 F.3d at 1036.  Second, where no evidence suggests that the claimant is a

22   malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and

23   convincing" reasons for doing so.  *Id*.

24       The "clear and convincing" standard is the most demanding standard in Social Security

25   case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ

26   "specifically identify the testimony she or he finds not to be credible and must explain what

27   evidence undermines the testimony[,]" *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

28   2001).  The ALJ must cite to the record and discuss specific evidence therein.  *See Vasquez v.*

4

*Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding). The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when determining credibility of subjective complaints. 20 C.F.R. § 404.1529(c); *Rollins*, 261 F.3d at 857.

If the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ typically references "the grids," under which a finding of disability may be directed, and also considers the testimony of a vocational expert. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow his or her performance of other occupations, he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is entitled to benefits. *Id*. § 404.1520(g).

**B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claim for benefits, the ALJ followed the five-step process described above.  (AR 24-26.)  The ALJ determined that plaintiff had not engaged in substantial gainful activity since December 12, 2009, the alleged onset date, and had "affective disorder (alternatively diagnosed as bipolar disorder and depression); status post right shoulder surgery; hypertension; and asymptomatic multiple sclerosis," each a severe impairment under the applicable regulations.  (*Id*. at 26.)

The ALJ also concluded that, in light of the medical evidence and opinions in the record, plaintiff's acute alcoholic pancreatitis, respiratory failure, and acute renal failure did not significantly limit his ability to perform basic work activities and, therefore, were not severe impairments.  (*Id*. at 26-27.)  With respect to the severe impairments, the ALJ concluded that they did not meet or medically equal the severity of a listed impairment in the relevant subpart of the regulations; therefore, a finding of disability was not directed at step three.  (*Id*. at 27-28.)

The ALJ proceeded to step four and made several findings.  First, the ALJ concluded that plaintiff's RFC permitted "light work" with the following restrictions: he can never climb; he must face no exposure to extreme heat; he must not work around "unprotected heights"; he must not operate dangerous/moving machinery, with the exception of motor vehicles; and he cannot receive or complete complex job instructions.  (*Id*. at 28.)

Second, the ALJ held that statements regarding the intensity and limiting nature of plaintiff's impairments were consistent with a reduced capacity for work, but were not credible to the extent that plaintiff alleged.    (*Id*. at 28-29.)    She cited inconsistent treatment, disproportionality between the complaints and objective clinical findings, internal inconsistency, and inconsistency with daily activities as bases for discounting plaintiff's credibility.  (*Id*. at 29.)  In making these findings, the ALJ reviewed and discussed the medical evidence, and accorded varying primacy to the several medical opinions.  (*See id*. at 29-32.)  In particular, the ALJ discussed at length Dr. Assad's findings and opinions, and assigned to them partial weight.  (*Id*. at 32.)  She declined to accept Dr. Assad's more sweeping restrictions on the basis of plaintiff's regular attendance at appointments, his function report and hearing testimony as to his daily

1  activities, and her impression of the mental health records from Dr. Assad and Dr. Malcom

2  Bacchus, plaintiff's primary care physician.  (*See id*.)  In light of these records, however, she

3  included as a restriction in plaintiff's RFC a limitation on complex job instructions.  (*Id*.)  Finally,

4  in light of her RFC determination and the testimony of the VE, the ALJ concluded that plaintiff

5  was unable to perform any of his relevant past work as a sales representative in the printing and

6  data processing services fields.  (*Id*. at 32.)

7       Therefore, the ALJ proceeded to step five.  First, based upon his RFC, additional

8  restrictions, transferable skills, and the VE's testimony, the ALJ concluded that plaintiff could

9  perform two jobs that exist in significant numbers in the national economy: telephone solicitor

10  and general merchandise sales, of which there are 22,000 and 47,000 respective positions

11  nationwide.  (*Id*. at 33.)  Second, the ALJ also identified two additional unskilled positions that

12  plaintiff could perform: cashier and mail clerk, of which there are 130,000 and 40,000 positions

13  in the national economy.  (*Id*.)  Consequently, she held that plaintiff was not disabled within the

14  meaning of the Social Security Act and denied his claim for benefits.  (*Id*. at 33-34.)

15  **C.**  **The ALJ did not err in her treatment of the VE's testimony.**

16       Plaintiff first argues that the ALJ failed to resolve a conflict in the testimony of the VE.

17  (#11 at 5-10.)   The VE testified that plaintiff could work in telephone solicitation and

18  merchandise sales, both of which are semi-skilled positions.  (*See* AR 33.)  Plaintiff contends this

19  was in error because 20 C.F.R. § 404.1568 states, in short, that some degree of complexity

20  inheres in semi-skilled work.  The Social Security Administration's Program Operations Manual

21  System ("POMS"), an internal publication, further states that "there is an increasing requirement

22  for understanding and memory and for concentration . . ." in semi-skilled and skilled work.  (#11

23  at 6.)  Accordingly, because the ALJ found that the record supported that plaintiff has "poor

24  concentration" and cannot perform complex job instructions (*see* AR 32), the VE's conclusion

25  that plaintiff could perform semi-skilled positions was allegedly in conflict, and the ALJ erred by

26  failing to resolve it through testimonial inquiry (#11 at 7-10).

27       Defendant counters that the argument of a conflict is meritless.  She argues that plaintiff's

28  argument of conflict distorts the language of the regulation.  (#13 at 3.)  Second, she observes that

1    the ALJ propounded a hypothetical to the VE at the hearing that included plaintiff's functional

2    limitations, including the instructional limitation.  (*Id*. at 4.)  Thus, the RFC finding accounted for

3    plaintiff's limitations.

4         "Occupational evidence provided by a VE . . . generally should be consistent with the

5    occupational information supplied by the [Dictionary of Occupational Titles ("DOT")]."  Security

6    Regulation ("SSR") 00-4p.  The DOT and other occupational guidelines are not binding,

7    however; as SSR-04p observes, the VE "may be able to provide more specific information about

8    jobs or occupations than the DOT."  SSR-04p; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217-

9    18 (9th Cir. 2005).  Accordingly, "[w]hen there is an apparent unresolved conflict between VE . .

10   . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict

11   before relying on the VE . . . evidence to support a determination or decision about whether the

12   claimant is disabled."  SSR 00-4p.  The SSR is binding upon ALJs.  *Holohan*, 246 F.3d at 1202-

13   03 n.1.

14        The court concludes that the ALJ did not err.  First, plaintiff's argument of a conflict is

15   entirely contrived.  20 C.F.R. § 404.1568(b), captioned with the subheading "semi-skilled work,"

16   unambiguously states that semi-skilled work "*does not require doing the more complex work*

17   *duties*."  Plaintiff even quotes this part of the regulation (*see* #11 at 6:8-9) immediately before

18   arguing that "[t]he Commissioner's regulations provide [that] semi-skilled work encompasses an

19   individual have the ability to perform complex job instructions . . ." (sic) (*id*. at 6:15-16).  The

20   juxtaposition of plaintiff's arguments and the regulation's plain text reveals the emptiness of

21   plaintiff's position.

22        The POMS do not alter this conclusion.  By the document's own qualification, semi-

23   skilled and skilled positions "often" have an "increasing" requirement for mental abilities.  The

24   presence of these words strongly suggests that not *all* semi-skilled positions have heightened

25   mental requirements; therefore, plaintiff must demonstrate that the particular positions at issue

26   inhere abilities that he lacks.  Curiously, plaintiff makes no such argument.  Additionally, POMS

27   is unpersuasive in the instant case because it broadly sweeps both semi-skilled and skilled

28   positions into the same description, despite the plain language of 20 C.F.R., under which these

1    types of position have tiers of complexity.  Because "POMS constitutes an agency interpretation

2    that does not impose judicially enforceable duties on either this court or the ALJ[,]" *Lockwood v.*

3    *Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010), this court declines to rely upon it

4    to displace the binding language of the applicable regulations.

5         Second, the ALJ correctly resolved any conflict that could have arisen.  The ALJ

6    incorporated plaintiff's mental limitations into the hypotheticals propounded upon the VE.  (*See*

7    AR 71, 72-74, 74-76.)  The VE explicitly stated that the telephone solicitor position that she

8    identified "does not require complex decision making or understanding of complex instructions . .

9    . ." (AR 74.)  Accordingly, plaintiff's argument is wholly without merit.

10   **D.    The ALJ erred harmlessly in her application of the Medical-Vocational Rules.**

11        Next, plaintiff argues that the ALJ failed to apply the proper Medical Vocational Rule.

12   (#11 at 10.)  He states that, because he cannot perform semi-skilled work, the ALJ should have

13   found him disabled pursuant to Rule 202.06 as of his fifty-fifth birthday due to his age, education,

14   past work experience, and RFC.  In contrast, defendant contends that the ALJ did not err in her

15   application of Rule 202.15.  (#13 at 4.)  She further argues that even if plaintiff was evaluated as a

16   person of advanced age, Rule 202.07 applied because he had transferable skills, and that Rule

17   would not direct a disability finding.  (*Id.*)

18        When a claimant is unable to perform relevant past work, the Medical-Vocational Rules,

19   or "grids," may direct a finding of disability.  *Tackett*, 180 F. 3d at 1100.  20 C.F.R. §

20   404.1563(b) states that the ALJ is to apply the age categories into which a claimant falls "during

21   the period" of time in which the ALJ makes the disability determination.  An ALJ errs by failing

22   to consider that a claimant changes age during the pendency of the consideration period and,

23   therefore, relies on the Medical-Vocational Rules applicable to a person of younger age.  *See*

24   *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).  The ALJ should perform the grids analysis

25   based upon the claimant's age as of the decision date.  *See Lockwood*, 616 F.3d at 1071-72.

26        Rule 202.15 applies to a claimant with an RFC at the light level who is "closely

27   approaching advanced age," i.e. fifty to fifty-four, is at least a high school graduate, and has prior

28   work experience that is skilled or semi-skilled.  It does not direct a finding of disability.  Rules

202.06 and 202.07 pertain to the same profile, except that the claimant is of "advanced age," i.e. fifty-five or older.  Rule 202.06 directs a finding of disability when the claimant lacks transferable job skills.  In contrast, Rule 202.07 does not direct such a finding if the claimant has transferable skills.  The presence of transferable skills, then, is dispositive to a person of advanced age.  Under SSR 82-41, "[w]hen a finding is made that a claimant has transferable work skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in . . . the ALJ's decision."

The ALJ's analysis was not without error.  In her decision, she stated that plaintiff was fifty-four years of age, "which is defined as an individual closely approaching advanced age, on the alleged disability onset date." (AR 32.)  This was incorrect.  Plaintiff's date of birth was July 22, 1955; he was fifty-seven and two months in age as of the decision date.  This placed him well within the period of "advanced age" on the date of decision, and the ALJ's application of the Medical-Vocational Rules should have reflected this change.  Therefore, rather than applying Rule 202.15 (*see* AR 33), she should have examined and applied Rule 202.06 or 202.07.

Nevertheless, her error was harmless because the record indicates that she found transferable skills, and therefore, she could have not found that plaintiff was disabled pursuant to Rule 202.06.  Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination, the ALJ's error is harmless.  *Robbins*, 466 F.3d at 885.  For plaintiff to grid to disabled at age fifty-five in light of his other vocational factors, he must demonstrate that he lacked transferable skills that allowed him to adjust to other semi-skilled work such that Rule 202.06 applies.  In her decision, the ALJ named the skills that plaintiff had acquired from his past work, "telephone sales skills and customer service skills" by which he could perform two semi-skilled occupations.  (*Id*. at 32-33).  Plaintiff's argument is not that he lacked transferable skills, but instead, that his mental limitations prevented his adjustment to all semi-skilled positions.  Because the court previously rejected that argument, *see supra*, there is no

1    basis upon which the court can conclude that the ALJ should have directed a disability finding

2    under the grids at step five.  Because plaintiff has transferable skills, the ALJ's misapplication of

3    Rule 202.15 was harmless.[1]

4    **E.      The ALJ properly evaluated Dr. Assad's opinion.**

5            Finally, plaintiff claims error in the ALJ's evaluation of Dr. Assad's opinion.  (#11 at 11-

6    14.)  Because Dr. Assad opined that plaintiff is unable to concentrate in periods exceeding two

7    hours, work consistently without an "unreasonable" number of rest periods, and deal with

8    "normal work stress[,]" he argues that the ALJ could not exclude these restrictions in her RFC

9    determination absent legally sufficient reasons for discrediting them.  (*Id*. at 11-13).  Plaintiff

10   states that each of the reasons articulated by the ALJ was legally insufficient.  (*Id*. at 13-14.)

11   Defendant responds that substantial evidence supports the ALJ's stated reasons.  (#13 at 5-7.)

12           An ALJ may encounter three types of medical opinions in the administrative record:

13   treating, examining, and nonexamining.  Each type receives different weight in the ALJ's review.

14   *Garrison*, 759 F.3d at 1012.  Generally, opinions from examining providers receive greater

15   weight than those from nonexamining providers, and among examining providers, the ALJ is to

16   accord greatest weight to the treating physician.  *Id*.  Opinions of treating physicians are

17   particularly persuasive because the continuity of care enhances their abilities to fully and

18   accurately assess the claimant's medical problems.  *Embrey v. Bowen*, 949 F.2d 418, 421-22 (9th

19   Cir. 1988).

20

21

---

22   [1] Had plaintiff successfully demonstrated that substantial evidence did not support a transferable
     skills finding, the grids would have directed a disability finding.  "[I]ndividuals may not be
23   expected to make a vocational adjustment to unskilled work in certain circumstances."  SSR 83-
     10.  That rule would be applicable here, had plaintiff's past semi-skilled work provided no
24   transferable skills to other semi-skilled work.  Although the ALJ identified two unskilled
     positions at step five (*see* AR 33), the finding would have been inapposite because the grids,
25   correctly applied to a claimant of advanced age with past semi-skilled work, would have directed
     a disability finding.  In other words, an ALJ's identification at step five of available unskilled
26   work will not overcome the disability finding directed by the grids.  *See* SSR 83-5a (stating that
     findings under the Medical-Vocational Rules are "conclusive"); *Distasio v. Shalala*, 47 F.3d 348,
27   349-50 (9th Cir. 1995) (stating that a finding of disability under the grids is conclusive); *see also
     Hanson v. Soc. Sec. Admin Comm'r*, No. 1:11-cv-00008-DBH, 2011 WL 6888642, at *4 (D. Me.
28   Dec. 28, 2011), *adopted sub nom. Hanson v. Astrue*, 2012 WL 423917 (D. Me. Feb. 09, 2012),
     *aff'd* 519 Fed. App'x 696 (1st Cir. 2013).

This is not to say, however, that the ALJ is bound by the conclusions of any particular medical provider.  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Although the ALJ must articulate "clear and convincing" reasons for disregarding a treating physician's uncontradicted opinion, *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008), she may reject a treating physician's opinion as long as she states specific and legitimate reasons that have support of substantial evidence.  *Garrison*, 759 F.3d at 1012.  An ALJ provides specific and legitimate reasons by articulating a detailed and thorough summary of facts and conflicting medical evidence, stating her interpretation thereof, and making findings.  *Id.*  Only when the ALJ fails to sufficiently explain why her conclusions are correct will the contradicted opinion of the claimant's doctor control.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).  In supporting a decision to accept certain medical opinions over others, the ALJ may cite contradiction, inconsistency with the evidence, and consistency of the accepted opinions with the administrative record as a whole.  *See Tommasetti*, 533 F.3d at 1041; *Batson*, 359 F.3d at 1195.

The ALJ provided a specific and legitimate reason for discounting Dr. Assad's opinion, and the reason has support of substantial evidence.  Dr. Assad opined that plaintiff's inability to handle workplace stress and maintain a regular work schedule rendered him disabled, in an undated psychiatric evaluation and also an August 2012 RFC questionnaire.  (AR 293-95, 677-81.)  The ALJ's reasons for assigning the opinion only partial weight included plaintiff's regular appointment attendance, his daily activities, and lack of evidentiary support.  (*See* AR 32).  In a separate part of the opinion, she also noted that Dr. Assad's opinion as to debilitating stress lacked support of his own exam findings.  (*Id*. at 31.)

The ALJ's burden was to provide specific and legitimate reasons for discounting the limitation.  Bacchus contradicted Dr. Assad's opinion as to a psychological disability by opining that plaintiff's objective exam results did not support a finding of a cognitive impairment.  (AR 550.)  Accordingly, the heightened "clear and convincing" standard does not apply.  *Garrison*,

759 F.3d at 1012.  Due to the ALJ's reasoning and the evidence in the record, the court concludes that lack of evidentiary support is a specific and legitimate reason with substantial evidentiary support.

The ALJ properly discredited Dr. Assad's opinion because it lacked sufficient evidentiary support.  *Batson*, 359 F.3d at 1195.  The ALJ noted that Dr. Assad's limitations opinion lacked support of objective findings.  (*See* AR 31) (noting that Dr. Assad's evaluation relied upon plaintiff's subjective statements rather than upon exam findings).   That Dr. Assad's opinion did not specifically cite particular evidence is not dispositive of its deserved weight.  The Ninth Circuit has held as sufficient even "check-box" assessments when they are have support in the record, including the particular physician's own treatment notes.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140-41 (9th Cir. 2014).  Unlike *Burrell*, however, Dr. Assad's notes provide no support for his sweeping findings.  Dr. Assad repeatedly found that plaintiff was "doing well" in treatment notes between March 2010 and August 2011 (AR 566-80, 636-39), and his treatment notes make no mention of workplace-induced stress.  His opinion claims that workplace stress led to plaintiff's hospitalization, but no evidence in the record indicates that the apparent emergency room visit in August 2008 resulted from due to work-related stress.  (*See* AR 294.)  Accordingly, due to the absence of support, the ALJ did not err by assigning only partial weight to Dr. Assad's opinion and declining to incorporate the most restrictive limitations into plaintiff's RFC.  *Tommasetti*, 533 F.3d at 1041; *Batson*, 395 F.3d at 1195.  As the ALJ met her burden for discrediting the extent of the restrictions, she did not err by declining to incorporate the full extent of Dr. Assad's opinion into plaintiff's RFC.

## IV.   CONCLUSION

Plaintiff challenges the ALJ's decision on the bases that the ALJ erred in her treatment of the Vocational Expert testimony, her application of the Medical-Vocational Rules, and her evaluation of Dr. Assad's opinion.  For the foregoing reasons, the court concludes that the ALJ did not err as to the VE and Dr. Assad's opinion, and that her error as to the Medical-Vocational Rules was harmless.  Consequently, the court recommends that plaintiff's motion for remand or reversal be denied, and defendant's cross-motion to affirm be granted.  The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#11) be **DENIED** and defendant's cross-motion to affirm (#12) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: June 10, 2015.

**UNITED STATES MAGISTRATE JUDGE**